UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**TIM W. TAYLOR**,                                    Case No. 6:15-cv-02167-KI

            Plaintiff,

                                                     OPINION AND ORDER

                    v.

**NANCY A. BERRYHILL**, Acting
Commissioner of Social Security,[1]

                    Defendant.


            Kathryn Tassinari
            Robert Baron
            Harder, Wells, Baron & Manning, P.C.
            474 Willamette, Suite 200
            Eugene, OR 97401

                    Attorney for Plaintiff

            Billy J. Williams
            United States Attorney
            District of Oregon

---

        [1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit.

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

Lisa Goldoftas
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Tim Taylor brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm

the decision of the Commissioner.

## BACKGROUND

Taylor filed an application for DIB on October 25, 2011, alleging disability as of

November 14, 2008.  The application was denied initially and upon reconsideration.  After a

timely request for a hearing, Taylor, represented by counsel, appeared and testified before an

Administrative Law Judge ("ALJ") on March 17, 2014.

On March 28, 2014, the ALJ issued a decision finding Taylor was not disabled within the

meaning of the Act and therefore not entitled to benefits.  This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

May 27, 2015.

PAGE 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

PAGE 3 - OPINION AND ORDER

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  *Parra*, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations. *Id.*

### THE ALJ'S DECISION

The ALJ found Taylor last met the insured status requirements of the Act on December

31, 2013. Taylor, according to the ALJ, had the following severe impairments: borderline

intellectual functioning; affective disorder; obesity; left hip arthritis; and right knee arthritis. The

ALJ found that these impairments, either singly or in combination, did not meet or medically

equal the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Given these impairments, the ALJ concluded Taylor had the residual functional

capacity ("RFC") to perform light work with the following restrictions: he can occasionally lift

and carry 20 pounds and frequently lift and carry ten pounds; he can stand or walk six hours, and

sit for six hours, in an eight-hour day; he can frequently climb ramps or stairs, but can only

occasionally climb ladders, ropes, or scaffolds; he has no limits balancing or stooping, but can

only occasionally kneel, crouch, or crawl. Additionally, the ALJ found Taylor should avoid

concentrated exposure to hazardous machinery or work at unprotected heights. He can

understand, remember, and carry out simple instructions at jobs classified at SVP 1 or 2, or

unskilled work. He can make judgements on simple work-related decisions and can respond

appropriately to supervision, co-workers, and deal with occasional changes in the work

environment. He has no difficulty dealing with the general public.

Based on this RFC, and the testimony of a vocational expert ("VE"), the ALJ concluded Taylor could not perform his past work. He could, however, perform other work in the national economy such as fast food worker, cashier 2, and production assembler. As a result, the ALJ found Taylor not disabled under the terms of the Act.

## FACTS

Taylor was 42 years old on his alleged disability onset date. He never graduated from high school or obtained his GED. He has work history in a lumber mill, but was laid off in 2008 when the company decreased staff at the mill. He has some high school education.

The medical evidence is not extensive, but Taylor sought medical care in February 2008 for left shoulder pain. At that time, he was snowboarding and biking for exercise. In June 2008, five months before his alleged onset date of disability, he sought medical care for a variety of mild ailments, including poison oak that he had contracted while playing Frisbee golf.

Michael Boespflug, M.D., examined Taylor in April 2009 when Taylor sought renewal of his medical marijuana card for chronic left hip pain. Taylor reported occasionally using Flexeril and Vicodin. Dr. Boespflug noted Taylor had no significant pain in his left hip upon range of motion. The doctor prescribed Vicodin for breakthrough pain and Flexeril as needed for muscle spasms.

Over a year later, Taylor returned to Dr. Boespflug seeking renewal of his medical marijuana card for left hip pain and left lumbosacral pain and tenderness. Dr. Boespflug observed tenderness over the left lumbosacral junction, and hip pain upon internal rotation to 20 degrees, but Taylor could externally rotate is hip at 40 degrees and it was less painful. The doctor recommended anti-inflammatories as needed.

PAGE 6 - OPINION AND ORDER

Again, over a year later, in August 2011, Taylor returned to Dr. Boespflug.  The doctor referenced x-rays from 2007 that revealed some arthritis and moderate bone spurring.  Taylor complained of increasing pain, difficulty standing and walking, and waking up three or four times at night.  Dr. Boespflug observed Taylor walking with a significant limp and decreased range of motion in his left hip compared with his right.  Taylor thought he could only stand or walk for one hour at a time, and could lift/carry up to 30 pounds.  The doctor indicated a need for updated x-rays which he hoped to obtain as part of Taylor's disability application.  He renewed Taylor's medical marijuana card for chronic pain.

After Taylor filed his applications, the agency sent Taylor to be examined by DeWayde C. Perry, M.D., on January 19, 2012.  Dr. Perry noted in his report that in 1987 Taylor was in a motorcycle accident that resulted in a hip fracture for which he underwent surgery.  Taylor reported increasing left hip pain over the past ten years, which worsened at night.  He described worsening pain when standing for more than two hours, lifting objects, and bending.  He was able to reduce the pain by lying or sitting down, and smoking marijuana.  Taylor reported smoking four to five bowls of marijuana a day; he had an Oregon marijuana card.  Dr. Perry reported Taylor's gait and his ability to squat was normal, as was his tiptoe and heel walking. His motor strength and muscle bulk and tone was normal.  Dr. Perry noted medial joint line tenderness in Taylor's right knee, as well as moderate tenderness on palpation, and with internal and external rotation, in the left hip.  The doctor diagnosed left hip degenerative joint disease and right knee arthralgia.  He thought Taylor could stand and walk up to four hours, lift and carry 20 pounds occasionally and 10 pounds frequently, and that he should not kneel or crouch.  Finally, Dr. Perry thought Taylor should not work at heights or with heavy machinery.

PAGE 7 - OPINION AND ORDER

A few months later, Taylor was referred to Pamela Roman, Ph.D., for a psychodiagnostic examination. Taylor lived with his girlfriend and four-year-old granddaughter. He was "not looking for work as he cares for their granddaughter every day after her school ends at 12:30 p.m." Tr. 281. He reported he could keep his pain levels–mainly from arthritis in his hip and pain in his neck–at a level 4 with medication and limiting his activities. If his pain spiked, he would lie down for an hour or two. He had used marijuana for thirty years. Taylor described getting up at 6:00 a.m., getting his granddaughter ready for school, and then getting her off the bus about 12:30 and putting her down for a nap. They attended church with their granddaughter sometimes. He did not drive or shop. In the evenings, he watched television or helped his granddaughter with flash cards. He did not sleep well because of pain. He could walk a few blocks before feeling pain. He also did not sit long due to pain. Dr. Roman observed slowed motor behavior and evident pain behavior. After testing, Dr. Roman noted Taylor's overall intellectual functioning was in the borderline range. Dr. Roman diagnosed Mood Disorder (anxiety and depression) due to chronic pain, and borderline intellectual functioning. He tested in the mild range for depression and moderate range for anxiety.

Dr. Roman felt Taylor could understand and remember instructions, but would have difficulty understanding and remembering more complicated instructions. She also thought, "Given his physical condition, maintaining attention and concentration throughout a normal work week and work day would likely be difficult for him. He is able to care for his granddaughter every afternoon but takes frequent breaks and works not to over exert himself physically." Tr. 286.

Taylor returned to Dr. Boespflug in November 2012 for a follow-up on his chronic pain and to renew his medical marijuana card.  The doctor observed Taylor walking with a significant limp and some pain behavior with walking.  Taylor declined repeated x-rays because of the cost–he was uninsured.  Dr. Boespflug replaced Taylor's Vicodin prescription with Norco and suggested glucosamine/chondroitin/MSM combination and ibuprofen.

A year and a half later, Dr. Boespflug examined Taylor again.  He identified left hip pain with internal rotation at ten degrees and external rotation at 20 degrees.  The plan was to repeat x-rays of the pelvis and hips, resume Flexeril, ibuprofen, and Vicodin, and refer Taylor to an orthopedist if increased evidence of arthritis is found.

At that time, the doctor also completed a medical evaluation listing Taylor's diagnoses as left hip post-traumatic arthritis, low back pain, osteoarthritis, and depression.  The doctor explained Taylor has trochanteric tenderness, pain, and limited range of motion in his left hip. He also reported Taylor's low back tenderness.  He indicated that Taylor's sensory/neuro examination was intact.  Taylor lied down every day for an hour and a half to three hours.  He treated his symptoms with ibuprofen, Flexeril, and Norco.  Taylor did not need to elevate his legs, but Taylor would miss more than four days per month of work.  Dr. Boespflug opined that Taylor had the ability to ambulate effectively.

Taylor saw Steven Shah, M.D., at Slocum Orthopedics.  Taylor reported pain in his low back and posterior left hip, which had worsened "over the last number of months."  Tr. 318.  He reported pain as high as 7/10, but that the anti-inflammatories and narcotics take the edge off. Dr. Shah identified no unusual anxiety or evidence of depression.  He also observed no limp, but pain with internal rotation of the left hip.  Taylor's knee, ankle and foot on both sides

demonstrated regular strength.  X-rays revealed moderate left hip posttraumatic arthritis.  Dr. Shah felt that Taylor's primary pain generator was not his left hip, but was rather his gluteal muscles of the posterior pelvis on the left side and his paraspinous muscles.  Dr. Shah felt that physical therapy to work on the low back and muscles around the hip and thigh was important to recovery.

## DISCUSSION

Taylor challenges the ALJ's decision on the following grounds:  his assessment of Taylor's testimony; his treatment of the medical evidence; and his rejection of the lay witness testimony.

I.    Taylor's Credibility

Taylor testified that he had last worked for Weyerhaeuser in 2008, and that he received unemployment benefits thereafter.  He explained that he was "just trying to survive" and that he would have worked had he found a job.  Tr. 52.  He explained that even towards the end of his job at Weyerhaeuser, he was "working through pain all the time." *Id.*  He was taking Vicodin, muscle relaxers, and prescribed ibuprofen, and sometimes smoked marijuana–as authorized by his doctor–to ease his pain.  During a period when he could not get pain medication, he smoked marijuana two or three times a day, but somebody else grew it for him for free.  He explained his granddaughter used to live with him (and his girlfriend), and that he would help get her up and ready for school, feed her a bowl of cereal, and get her on the bus at the bottom of his driveway.  He then spent 30 minutes to an hour helping her after school with games or reading to her.  His girlfriend shopped and cooked.  He reported not sleeping well.  He thought he could not handle a

sedentary job because he needed to lie down during the day to relieve the pain.  Once or twice a week, he needed to lie down more than two or three hours a day.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  *Id.*  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[2]

The ALJ found Taylor's testimony about the intensity and limiting effects of his pain and other symptoms not entirely credible for several reasons.  First, the ALJ summarized the medical

---

[2]The Commissioner argues the clear and convincing standard need not control the analysis, encouraging application of the more deferential regulatory requirement for specific reasons supported by substantial evidence.  Def.'s Br. 8, n.18.  The Ninth Circuit has rejected her argument.  *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

evidence and found it did not support the level of debilitation Taylor claimed. The two non-examining agency physicians, after reviewing the record, found Taylor could perform light work. Additionally, Dr. Perry's examination revealed normal range of motion, only moderate tenderness to the left hip and some pain with internal and external rotation, and normal squat, gait, tiptoe and heel walking. Finally, the ALJ pointed to Dr. Shah's most recent examination revealing no limp, nearly full left hip range of motion, full lower extremity strength, and only moderate arthritis in the left hip which Dr. Shah felt was not the "primary pain generator[.]" Tr. 322.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Importantly, the ALJ considered the findings of examining physician Dr. Perry, whose opinion was based on his examination of Taylor in January 2012. Taylor had a normal gait and squat, and could tiptoe and heel walk. These normal findings, along with Dr. Shah's corroborating examination revealing normal gait, full lower extremity strength, and x-rays indicating that Taylor's left hip arthritis was not severe enough to be his primary pain generator, support the ALJ's conclusion. Further, Dr. Shah recommended only physical therapy and a home exercise program.

The ALJ also thought it worth noting that Taylor presented inconsistently at examinations. In August 2011, when renewing his medical marijuana card, Taylor had a limp. Dr. Perry observed in January 2012 that Taylor could walk normally and on his toes and heels. Ten months later, in November 2012, when again requesting renewal of his medical marijuana

card, Taylor walked with a significant limp and displayed some pain behavior when walking.  He

declined an x-ray due to cost.  Taylor had no limp in February 2014.  The ALJ found these

inconsistencies diminished Taylor's credibility.  Taylor chalks his inconsistent presentation up to

waxing and waning symptoms.  *See* SSR 96-7p (symptoms "may vary in their intensity,

persistence, and functional effects, or may worsen or improve with time . . . .").  Taylor's

inconsistent presentation of symptoms, however, makes the ALJ's conclusion just as reasonable.

*See Molina*, 674 F.3d at 1110.

        The ALJ also reviewed Taylor's mental health symptoms in the context of the medical

record, noting the non-examining physicians' conclusions that he can perform simple work.

Additionally, Dr. Roman's examination–suggesting an ability to perform simple tasks–is

consistent with his past work history.  The ALJ also commented on the lack of treatment for

mental health impairments, and the fact that Taylor showed no signs of anxiety or depression at

the February 2014 examination.

        As Taylor points out, an inability to afford treatment is not an acceptable reason for an

ALJ to find a claimant not credible.  Here, however, Taylor never utilized his visits with Dr.

Boespflug–for which he was already paying–to seek treatment for any problems with anxiety or

depression.  His failure to do so suggests any impairments are not so severe as to interfere with

his ability to work.  *Tommasetti*, 533 F.3d at 1039 (unexplained failure to seek treatment or to

follow a prescribed course of treatment is a credibility factor).  Additionally, as I discuss below,

Taylor reads into Dr. Roman's report an opinion as to Taylor's combined mental and physical

impairments, when the ALJ's reading is just as rational.

PAGE 13 - OPINION AND ORDER

Taylor's daily activities, including his ability to drive, care for his granddaughter–including getting her up at 6 in the morning and feeding her, and then caring for her all afternoon–and his quite physical activities of biking, snowboarding, and playing Frisbee golf in the months just before his alleged onset date of disability, suggest Taylor's impairments do not prevent him from working. While these activities are not overwhelmingly indicative of Taylor's ability to work, the ALJ's conclusion is a rational one.

The ALJ pointed out Taylor was laid off in 2008, received unemployment benefits in 2010 and 2011, and that his injuries occurred before his alleged onset date, all suggesting Taylor's testimony about his limitations is exaggerated. While Taylor points out that he testified he worked through his pain, but thought he could not have worked 40 hours a week at the time he was receiving unemployment, the fact that he stopped working due to the lay off as opposed to his impairments, and his high level of physical activity in the months just before his alleged onset date, are proper credibility considerations for the ALJ. *Tommasetti*, 533 F.3d at 1039 (If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing.").

Finally, the ALJ questioned Taylor's motivation to see Dr. Boespflug. While Taylor reported an inability to afford medical care and medications, he was able to pay Dr. Boespflug to renew his medical marijuana card, and he was able to afford smoking four to five bowls of marijuana every day. Even assuming the truth of Taylor's testimony that someone gave the marijuana to him for free, Taylor also testified that he had smoked marijuana for 30 years even before he was injured, suggesting his use of marijuana was recreational in part. Taylor chides the ALJ for considering his use of medical marijuana when there is no evidence narcotics would be better for him, when Taylor was able to obtain the drug for free, and for questioning his inability

to pay for medical treatment.  Even if this was not a clear and convincing reason to question Taylor's credibility, the fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

In sum, the ALJ gave sufficient clear and convincing reasons to question Taylor's testimony about the extent of his pain, and the effect it had on his ability to work.

II.    Medical Evidence

Taylor disputes the ALJ's conclusion that Dr. Boespflug's opinion was unsupported by objective findings.  Additionally, Taylor argues the ALJ erred in failing to credit Dr. Roman's opinion.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark*, 454 F.3d at 1066 n.2.

PAGE 15 - OPINION AND ORDER

A.    Dr. Boespflug

The ALJ rejected Dr. Boespflug's opinion that Taylor would miss more than four days of work a month because the ALJ felt the doctor was overly reliant on Taylor's report of needing to lie down rather than objective findings.  On examination, Taylor demonstrated only minor range of motion limitations, and the imaging reflected only moderate impairment.

As summarized above, Dr. Boespflug identified few objective signs to validate Taylor's reports of pain.  It was not until August of 2011, almost three years after Taylor's alleged onset date of disability, that the doctor commented on Taylor's limp.  In his functional findings, as the ALJ noted, Dr. Boespflug did not explain why he concluded Taylor would miss more than four days a month of week, nor why his patient needed to lie down every day.  If Dr. Boespflug thought, as Taylor argues, that Taylor needed to lie down due to low back tenderness and hip pain, he did not say so.  *See* Tr. 301 (no answer to question "for what reason" does patient have to lie down or rest during the day).  Notably, the doctor did not think Taylor needed to elevate his legs.  Without an explanation from Dr. Boespflug for his opinion, it was rational for the ALJ to conclude that the doctor relied on Taylor's reports alone.  A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti*, 533 F.3d at 1041.  Further, an ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is " conclusory, brief, and unsupported by the record as a whole[.]"  *Batson*, 359 F.3d at 1195.  Given the opinions of Dr. Perry, Dr. Berner, Dr. Kehrli, and Dr. Shah, substantial evidence supports the ALJ's specific and legitimate reasons for rejecting Dr. Boespflug's opinion.

PAGE 16 - OPINION AND ORDER

B.    Dr. Roman

Dr. Roman thought Taylor's physical condition would make "maintaining attention and concentration throughout a normal work week and work day" difficult for him.  Tr. 286. Although the ALJ gave weight to Dr. Roman's opinion that Taylor could not perform complex tasks, he thought Dr. Roman's opinion as to the effect of Taylor's physical condition was outside the scope of her area of expertise and appeared to rely on Taylor's reports.  The ALJ pointed out that Dr. Roman did not examine Taylor's physical capabilities, and that she must have relied on Taylor's reports of pain which were not fully credible.

Taylor disputes the ALJ's conclusion that Dr. Roman relied on his statements, rather than on test results, in opining he would have difficulty maintaining attention and concentration in a work day and work week.  He points to his ability to recall only two of three unrelated items after three minutes, and his error when adding three to numbers, that his Working Memory and Processing Speed scores were in the borderline range.  Instead of emphasizing these examination findings, the ALJ relied on non-examining consultants who did not fully appreciate the results Dr. Roman's testing revealed.[3]  Further, Dr. Roman diagnosed Taylor with a Mood Disorder, which requires as part of the diagnosis a finding that the patient has a prominent and persistent disturbance in mood due to physiological effects of a medical condition.  As a result, Dr. Roman's conclusion that Taylor's physical pain would affect his ability to concentrate was within her expertise.

--------------------

[3]Thus, contrary to the Commissioner's argument, Taylor did object to the ALJ's reliance on the state agency consultants.

The ALJ's reading of Dr. Roman's conclusion is rational and supported by the record.

Dr. Roman's opinion on Taylor's ability to attend and concentrate reads, in full, as follows:

> In terms of attention and concentration, he could recall two out of three unrelated items after three minutes. He scored in the average range on the Digit Span subtest. He made two errors when adding three to numbers and inserted the "n" when saying the alphabet straight through. Given his physical condition, maintaining attention and concentration throughout a normal work week and work day would likely be difficult for him. He is able to care for his granddaughter every afternoon but takes frequent breaks and works not to over exert himself physically.

Tr. 286. Dr. Roman based her conclusion about Taylor's attention and concentration problems on his physical condition, not his psychological condition. Indeed, she immediately referenced Taylor's physical ability to care for his granddaughter after stating her opinion. The ALJ could properly give more weight to Dr. Perry's examination findings, as a medical doctor who tested Taylor's functional capacity, over the opinion of a psychologist who appeared to rely on Taylor's reports of pain. 20 C.F.R. § 404.1527(c)(5); *see also Tommasetti*, 533 F.3d at 1041 (specific and legitimate reason to reject opinion "based to a large extent on a claimant's self-reports that have been properly discounted as incredible"). Although Taylor proposes an alternative reading of the opinion–one based on his test results–the ALJ's conclusion is just as rational. *Molina*, 674 F.3d at 1110 (court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations).

III.    <u>Lay Testimony</u>

Sonya Spencer, Taylor's girlfriend, completed a questionnaire about Taylor's functionality. She commented on his decreased ability to perform yard work and household chores, and his increased pain levels. Spencer reported that Taylor helps prepare his grand-

PAGE 18 - OPINION AND ORDER

daughter for school, picks up the house if he is able, and supervises the grand-daughter. He has

no problems caring for his personal needs or grooming. He prepares sandwiches and frozen

foods, which is no different from before his disability onset. Spencer finds she needs to finishes

the tasks Taylor starts. Taylor accompanies Spencer to the grocery store once or twice a month.

He spends his days watching television and reading to his granddaughter. He attends Sunday

school with his grand-daughter. Spencer noted that Taylor has trouble with physical tasks and

that he has a hard time understanding written instructions. He could walk two or three blocks

before resting; he could pay attention 20 to 25 minutes at a time.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must

take into account unless he gives reasons for the rejection that are germane to each witness.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ rejected

Spencer's report for two reasons: (1) Taylor's activities since his alleged onset date exceeded the

limitations she identified; and (2) examining physicians' opinions conflicted with her

observations.

Rejection of Spencer's report for the same reasons as the ALJ gave for the Taylor's

testimony is acceptable where the testimony is similar. *Valentine v. Comm'r of Soc. Sec. Admin.*,

574 F.3d 685, 694 (9th Cir. 2009) (acceptable to reject spouse's testimony for same reasons given

for claimant if spouse's testimony was similar to claimant's complaints). Further, as the ALJ

pointed out, objective medical evidence, such as Dr. Perry's examination, conflicted with

Spencer's observations. The ALJ gave germane reasons for rejecting Spencer's report.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

Dated this   22nd   day of February, 2017.


    /s/ Garr M. King
Garr M. King
United States District Judge